May Term, 1859.

DEARMOND
v.
DEARMOND.

*L. P. Milligan*, for the appellee.

---

DEARMOND and Others *v.* DEARMOND and Others.

Every man being presumed to be sane until the contrary appears, the rejection of evidence tending to prove the sanity of the grantor in a deed, where no evidence has been introduced to prove him insane, is not error.

Where a complaint to set aside a deed was not grounded on the incapacity of the grantor, but on the non-delivery of the instrument, testimony of incapacity was held to be irrelevant.

Testimony sought to be evoked on cross-examination, which is not germane to any matter testified to on the examination in chief, and not pertinent to the issue, must be ruled out.

If a party wishes to examine a witness of the opposite party touching a matter not testified to upon his examination in chief, he must make the witness his own.

May Term,
1859.

DEARMOND
v.
DEARMOND.

Where a defendant to an action for the cancellation of a deed for non-delivery, conveyed his interest in the land, after the suit was commenced, and the issues formed, but before the trial, it was held that, under the code, his co-defendants could not introduce him as a witness to prove the delivery of the deed, without having his name stricken from the record as a party; that the striking out of the party's name was a matter of discretion for the Court; and that where a discretionary power is not improperly exercised, the Supreme Court will not interfere.

Where the party whose name is sought to be thus stricken out has made costs, and the motion to strike out is not accompanied by an offer to pay costs, or let a judgment be rendered against him for costs, it is not error to refuse to discharge him.

Monday,
June 13.

APPEAL from the *Fayette* Circuit Court.

WORDEN, J.—This was an action by the appellees against the appellants to set aside a conveyance of certain real estate. The plaintiffs below were a part of the heirs at law of *William L. Dearmond*, deceased, and the defendants were the remainder of those heirs. The complaint alleges, in substance, that on the 1st of *October*, 1852, the decedent, *William L. Dearmond*, made and acknowledged a deed for certain lands therein described, purporting to convey said lands to the defendants, but that said deed was never, in any manner, delivered by the grantor to said grantees, but on the contrary thereof, was retained and kept by the grantor until the time of his death, which happened in *December*, 1853, when it was found among his papers, and fraudulently seized upon; and that afterwards, on the 6th of *February*, 1854, the defendants caused the deed to be recorded, and are now setting up and claiming title to the land, and have taken possession of the same under the deed.

Prayer, that the deed may be set aside, &c.

Answer in denial, averring that the deed was executed and delivered for a good and valuable consideration, &c.

Trial by jury; verdict and judgment for plaintiffs, a motion for a new trial being overruled.

On the trial, the plaintiffs having called and examined as a witness, one *John S. Springer*, the defendants, on cross-examination, proposed to prove by the witness, that the deceased was of sound mind, and capable of transact-

ing his business, from the time of the making of the deed <span>May Term, 1859.</span> up to the time of his death; but the Court ruled out the evidence, saying to the jury that his sanity would be presumed.   There was no error in this ruling.   There had been no evidence given as to the sanity or insanity of the grantor.   Every man is presumed to be of sane mind until the contrary appears.   1 Greenl. Ev., § 42.

DEARMOND v. DEARMOND.

But besides this, the evidence was entirely without the issues in the case.   The plaintiffs, in their complaint, had not sought to set aside the deed on the ground of the incapacity of the grantor, but simply on the ground that the deed was never delivered.   Hence, the testimony was wholly irrelevant.

On the cross-examination of another witness, *Joel Rhodes*, a brother of the widow of the deceased, the defendants offered to prove that said widow, during her coverture with the deceased, abandoned the bed and board of her said husband, and ran away from him, on account of difficulties between them, and was advertised by him in the usual manner; but this testimony was ruled out.   This was not a legitimate cross-examination as to any matter testified to by the witness in his examination in chief; nor can we perceive its relevancy to the question in issue between the parties, viz.—the delivery of the deed.   We see no error in this ruling.

The plaintiffs called as a witness, one *James Stevens*, and proved by him that *Alfred Dearmond*, one of the defendants, had told the witness that he, *Alfred*, accused the widow of taking money and burning the deeds.   He did not specify what deeds he referred to, nor tell what induced him to suspect the widow of taking the money and burning the deeds.   On the cross-examination, the defendants offered to prove by the witness "the reasons for the defendants' suspicions of the said widow, as deposed to by the said witness;" but the Court ruled out the evidence.   The witness had already testified that *Alfred* did not tell what induced him to suspect the widow of taking the money and burning the deeds; and we understand the evidence offered to be what the witness knew about the cause of

such suspicions, independently of what *Alfred* said about it. In our judgment the ruling of the Court was correct. The evidence offered was not a legitimate cross-examination, but went to a matter not embraced in the examination in chief. The examination in chief went merely to the declaration of one of the defendants.

On a cross-examination, the defendants would have the undoubted right to draw out all that was said at the time, in relation to the subject about which the statements sworn to were made. This, however, was not the character of the testimony offered. The testimony of the witness, in chief, was, that one of the defendants admitted that he had accused the widow of taking the money and burning the deeds. The testimony offered on cross-examination was, the reason of such accusation, not from what was said, but from other sources of information. The rule, we think, is well established, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination; and if he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. 1 Greenl. Ev., § 445.

This evidence, we think, was also wholly immaterial and irrelevant. The statements proven by the witness in his examination in chief, could only have been admissible, as far as we can discover, for the purpose of affording an inference that the deed which the defendant, *Alfred,* accused the widow of burning, was in her possession, and not in the possession of the defendants, and this might probably be considered by the jury in determining whether the deed had ever been delivered to the defendants. But the reasons which caused the defendants to entertain such suspicions, we think, could throw no light upon the question as to the delivery of the deed.

After the evidence was closed on the part of the plaintiffs, the defendants produced the affidavit of *William Dearmond,* one of the defendants, by which it appeared that on the 25th of *June,* 1855, he, for a valuable considera-

tion, sold and conveyed his interest in and to the land in controversy to *Milton Dearmond*, another of the defendants, and gave him a quitclaim deed therefor, wherefore he had no interest in the event of the suit. They also produced the affidavit of said *Milton Dearmond*, stating substantially the same facts, and that affiant knew of no other witness except the said *William*, by whom he could prove the delivery of the deed in question, and that he was informed and believed that said *William* had no interest in the event of the suit, and praying that the name of said *William* might be stricken out of the record, and he be admitted as a witness to prove the consideration and delivery of the deed. The deed from *William* to *Milton* was also produced.

The defendants thereupon moved to strike out the name of said *William* as a party to the suit, with a view of making him a witness to testify to the following facts, viz.:

" That the witness contracted with his father, the grantor, for the land described in the deed, about a year before the deed was executed, and paid a valuable consideration for the same, with the understanding that the grantor was to retain the possession, and have the use of the land so long as he should live; that the contract was then consummated; that the grantor brought him the deed within some three days after its execution, and delivered it to him, telling him to keep it for himself and the other children therein; that said *William* took the deed, examined it, and found it drawn agreeably to the contract; that the grantor then gave him permission to get the deed recorded at once, if he desired to do so, but as the grantor was to retain the possession, and have the profits of the land, so long as he lived, it was finally agreed that the deed should not then be recorded, but that the grantor should retain the same in his possession in a certain stand drawer, where the grantees could find and get the same after his death, and that the deed was again placed in the grantor's possession for that purpose; that at this time, he had no knowledge or intimation that his father ever intended to marry again, and that he did not believe then that he ever

would marry again; that the grantor then assigned as the only reason why he wished the matter of the existence of the deed kept from being made public, except to those for whose benefit it was made, was, that his other children had been contrary, and had caused him a great deal of trouble, and if they knew it, they would perhaps keep it up."

The Court overruled the motion, and said *William* was not permitted to testify.

It perhaps should be observed that the transfer from *William* to *Milton* was made after the suit was commenced and the issues made up, but before the trial.

It is insisted that the above ruling of the Court was erroneous, and that the testimony of said *William*, on the points proposed should have been received.

Could the testimony offered have been received, although the proposed witness was a party-defendant?

It is provided by § 238, 2 R. S. p. 80, that "No person offered as a witness shall be excluded from giving evidence, either in person or by deposition, in any judicial proceeding, by reason of incapacity from crime or interest. But this section shall not render competent a party to an action, or the person for whose use it is brought, or the husband or wife of any such party."

At common law, a liability for costs was such an interest as excluded a person from testifying. 1 Greenl. Ev., § 401. The above statute rendering competent an interested party, does not render competent a party to an action; hence it is not applicable to the case under consideration.

Section 302 of the code, provides that "A party may be examined on behalf of his co-plaintiff or co-defendant, as to any matter in which he is not jointly interested or liable with such co-plaintiff or co-defendant, and as to which a separate and not a joint judgment shall be rendered," &c.

We are of opinion that the testimony offered was not competent under this provision. The testimony went to a matter in which the defendants were all jointly interested, viz., the delivery of the deed. The controversy was of

such a character that a separate judgment could not be rendered. If the deed was never delivered, it, of course, is void as to all the defendants, and if delivered, as intimated in the proposed evidence, it would be good as to all the defendants.

The transfer by the proposed witness, of his interest in the land in controversy, did not render him competent, because he was still a party to the record, and, as such, was liable for costs, and that liability he could not avoid by transferring his interest in the matter in suit to a co-defendant.

Did the Court below err in refusing to permit the name of the proposed witness to be stricken from the record as a defendant, and thereby render him a competent witness?

This rested in the discretion of the Court below. By the transfer, the cause was not abated as to the said *William*, and might proceed against him as well as the other defendants; or his name might be stricken out. 2 R. S. p. 32, § 21, and p. 48, § 99. See, also, *Dearmond* v. *Dearmond*, 10 Ind. R. 191.

There is nothing in the case showing that the discretion vested in the Court below has been improperly exercised, and where that is the case this Court will not interfere.

The party whose name was sought to be stricken out, was liable for costs, and the motion to strike out was not accompanied by any offer to pay the costs up to that time, or to let judgment go against him for the costs. He had joined with the other defendants in setting up a title in themselves in the land through the deed, the delivery of which was attempted to be proven by him; and we think that where a defendant has thus made costs, it is not error to refuse to discharge him, and thus relieve him from a liability to pay them, or pay costs that the plaintiffs might recover.

We do not wish to be understood as deciding that if he had succeeded in getting his name stricken from the record, he would have been a competent witness upon the points proposed to be proven by him. When such question arises directly, it will be time to decide it.

*Margin:* May Term, 1859.

DEARMOND v. DEARMOND.

The defendants asked several instructions to the jury, which were refused; but we are of opinion that they were all substantially embodied in the charge given by the Court.

Where the charge refused is substantially given by the Court, though in another form, such refusal is not erroneous. *Gentry* v. *Bargis*, 6 Blackf. 261.—*Nelson* v. *Hardy*, 7 Ind. R. 364.

The Court gave a general charge to the jury, which was excepted to by the defendants; but we think it, on the whole, as favorable to them as they could ask. As no objection whatever to the charge given, has been pointed out in the brief of counsel, we have not thought it proper to lengthen this opinion by copying it.

There is no error assigned upon the refusal of the Court to grant a new trial. The assignment is "that the verdict is not sustained by the evidence, and is contrary to law." Passing by the question whether this assignment is sufficient, we may remark that we think the verdict is sustained by the evidence, and that it cannot be disturbed.

We see no error in the record, and the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*S. W. Parker, J. C. McIntosh, J. S. Reid,* and *S. Heron,* for the appellants.

*J. Ryman* and *B. Spooner,* for the appellees.