Powell v. Horrell.

MARY J. POWELL et al., Administrators, Appellant, v. STEPHEN B. HORRELL, Respondent.

**St. Louis Court of Appeals, February 18, 1902.**

1. **Partnership: INTEREST.**   In the settlement of a partnership estate, it is legal to allow against a partner who retains the proceeds of a sale of partnership property six per cent interest from the date when the proceeds were so received. (Campbell v. Coquard, 93 Mo. 474.)

2. **Judgment: ANSWER: PRACTICE, TRIAL.**   A defendant is not entitled to a judgment for a greater amount than is claimed in his answer.

Appeal from Cape Girardeau Court of Common Pleas.—
*Hon. Frank E. Burrough*, Judge.

AFFIRMED.

*Wilson Cramer* and *T. D. Hines* for appellants.

(1) A bill for an accounting between partners may be maintained by the executor or administrator of a deceased partner. 17 Am. and Eng. Ency. of Law, p. 1277. (2) The settlement between the partners of October 4, 1886, should not be disturbed. It was not opened up by the trial court, nor should it be by this court, for "a settlement fairly made between partners must be repudiated within a reasonable time in order to be opened and will not be disturbed after a long time and after the death of a party to it." 17 Am. and Eng. Ency. of Law, p. 1288; Ross v. Carson, 32 Mo. App. 148; Story on Partnership, sec. 348a, and note; Leabo v. Renshaw, 61 Mo. 292; Gaskill v. Spence, 83 Mo. App. 380.

*W. H. Miller* and *R. B. Oliver* for respondent.

(1) Where the whole record shows, as this one does, that the judgment of the trial court was for the right party, this court will not disturb such judgment. Fell v. Mining Co., 23 Mo. App. 216; Bassett v. Glover, 31 Mo. App. 150; Cheek v Glover, 39 Mo. App. 21; Phillips v. Bachelder, 47 Mo App. 52. (2) Haupt and Hickman, disinterested witnesses, have testified that these moneys and notes were made and paid to him, and the burden is upon him, or his representatives, to account for their disposition and disbursement. They have not done so and the trial court has been most generous in stating the account between these partners. Frame v. Sovereign Camp, 67 Mo. App. 127; Bradley v. Bradley, 119 Mo. 58; State ex rel. v. Jones, 131 Mo. 194; Bogie v. Nolan, 96 Mo. 85.

BLAND, P. J.—The petition alleges that Peter Powell died in Cape Girardeau county, April 16, 1896, and that plaintiffs were duly appointed administrators of his estate by the

Powell v. Horrell.

probate court of said county and that they qualified as such. For cause of action it is, in substance, alleged, that on March 18, 1882, Powell, the deceased, and the defendant, bought a one hundred and seventy acre farm in Cape Girardeau county for two thousand six hundred and eighty dollars; that they held and managed same as partnership property until in the fall of 1886, when they sold the farm; that during the existence of the partnership Powell paid divers sums of his individual money on the debts of the partnership and for repairs on the farm; that on account of these payments defendant was indebted to Powell's estate in the sum of one thousand dollars; that no settlement of the partnership affairs had been made, and prayed for an accounting.

The answer admitted the death of Powell, the legal capacity of plaintiffs to sue, the partnership in respect to the farm, the sale of the farm; that no settlement of the partnership affairs had been made, denied any indebtedness to Powell's estate; on the contrary alleged that the estate was indebted to defendant in the sum of eight hundred and six dollars and seventy-five cents.

The facts are that when the purchase of the farm was made, Powell and defendant gave their note to L. H. Davis for the whole of the purchase money, two thousand eight hundred and sixty dollars, dated March 24, 1882, due one day after date and bearing eight per cent compound interest. The entire management and control of the farm was given over to Powell, who rented it and collected the rents. Various payments were made from time to time on the Davis note, generally by Powell. On October 4, 1886, Powell and defendant sold ninety-one acres of the land to J. E. Hickman for one thousand two hundred and fifty-three dollars. Two hundred and thirty-six dollars of the purchase price was paid in money and a note taken for the balance of one thousand and seventeen dollars, payable to Powell individually.

The trial court found, and we think the evidence clearly

warrants the finding, that when the sale was made to Hickman, Powell and defendant had a settlement of their farm partnership affairs, in which settlement it was found that there was due to Powell, one thousand and seventeen dollars and that the Hickman note was made payable to him individually in order to balance the account and to make them, as the witnesses expressed it, "even." After this, on October 19, 1886, Powell and Horrell made a payment of six hundred and forty-five dollars on the Davis note, and afterwards on November 26, 1886, they took up the Davis note, upon which there was due at the time a balance of one thousand and thirty dollars. They took up this note by giving a new note to Elizabeth Davis for one thousand two hundred and ninety-nine dollars and fifty-three cents, which included the balance of one thousand and thirty dollars on the old note and an additional sum of money loaned them on the occasion by Davis. It appears that there was an error of one hundred and forty-nine dollars and eighty-nine cents in the amount for which the note was given, which error was corrected by indorsing a payment on the back of the note of that amount on the day it was executed. This note was due one day after date with eight per cent compound interest. This was the only debt the partnership owed at that time, except a small amount of taxes. On October 24, 1886, Powell and Horrell sold the remaining portion of the farm to C. W. Haup for two thousand and sixty-one dollars. Haup paid one hundred dollars cash and gave his note payable to Powell and Horrell for the balance, one thousand nine hundred and sixty-one dollars, bearing eight per cent interest from date. This note was delivered to Powell and it with the accrued interest was paid to him in a short time afterwards—the exact date of payment is not given. On December 10, 1886, Powell paid seventeen dollars and fifty-five cents taxes on the farm and afterwards in 1887 he paid fourteen dollars and seventeen cents taxes, presumably due for taxes of 1886.

There is a mass of testimony in the record in respect to rents collected by Powell prior to October, 1886, and in respect to repairs on the house and fences on the farm paid for by Powell and of the payments made by him on the first Davis note, which we will not review for the reason that we think all of these matters were included in the settlement made by Powell and Horrell in October, 1886, and were adjusted by them at that time to their satisfaction.

After the sale to Haup and the giving of the Elizabeth Davis note, there was nothing left of the partnership except one asset, the Haup note for one thousand nine hundred and sixty-one dollars and the following debts: The Davis note for one thousand one hundred and forty-nine dollars and sixty-four cents, taxes for 1885 and 1886, thirty-one dollars and seventy-two cents, making a total indebtedness of one thousand one hundred and eighty-one dollars and thirty-six cents, showing a balance of assets over and above indebtedness, seven hundred and seventy-nine dollars and sixty-four cents.

It appears from the evidence that Powell and Horrell were close personal friends; that the farm was bought for speculative purposes and that Powell transacted all the partnership business, collected and disbursed the income from both the rents and the sales. Horrell took no active part whatever in the management of the partnership affairs or in looking after them but trusted everything to Powell.

The Elizabeth Davis note was due one day after date. It bore the same rate of interest that the Haup note bore, so that when the Haup note was paid, Powell had funds of the partnership in his hands with which he could and should have paid the Davis note. Why he did not pay it is not explained. Had he paid the note he would have had left in his hands at least seven hundred and seventy-nine dollars and sixty-four cents belonging to the partnership. One-half of this sum, three hundred and eighty-nine dollars and eighty-two cents, was due the defendant. Instead of doing what he should have done

and what he was bound to do, Powell, for some reason, made no payment on the Davis note until January 2, 1889, when he paid three hundred and fifteen dollars. On November 23, of the same year, he made another payment of four hundred dollars. These were all the payments he made on the note. After his death the balance of the note (one thousand three hundred and ninety-one dollars and fifty-three cents) was probated against his estate and paid by the administrators. Plaintiffs insist that defendant should share equally the burden of the accumulated interest that was negligently permitted to accrue on the Davis note by Powell. It requires neither argument nor the citation of authorities to convince a reasonable man that the contention is opposed to all equity and all ideas of fairness. The evidence is clear, convincing and uncontradicted that Powell had the money in his hands derived from the Haup note, either in the latter part of the year 1886 or early in the year 1887, to pay the Davis note and a surplus which he should have divided with the defendant.

The trial court found the amount which Powell should have paid defendant to be five hundred and one dollars and fifty cents, but the taxes for 1885 and 1886 paid by Powell were not taken into calculation. Powell's estate is clearly entitled to a credit of these taxes, as they were paid after the settlement of October, 1886, and were partnership debts. The trial court, we think, correctly held that the partnership was virtually concluded in November, 1886, and was then owing but one asset and owed but one debt, besides taxes. Just when Powell received payment of the Haup note is not shown but Haup testified that he paid it in a short time after it was given. His evidence leaves the impression that he paid it in a few months after its date.

The trial court allowed six per cent interest on what it found due from the Powell estate to defendant. We think this was correct and is supported by Campbell v. Coquard, 93 Mo. 474, and Thomas v. Bank, 49 S. W. 539, referred to and

relied on by the trial judge in his finding of the law and facts, but the court postponed the date at which interest should commence to November 23, 1889. We are not disposed to adopt so late a date for the interest to begin to run. It seems to us that it should be calculated from an earlier date. To do so on the amount we have found to be due (three hundred and eighty-nine dollars and thirty-two cents) would slightly increase the amount of the judgment rendered by the trial court for the defendant and be above the amount claimed to be due by the answer, to-wit, eight hundred and six dollars and seventy-five cents. As we can give the defendant no more than he asks, we will let the judgment stand as rendered. The judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.